Reversed and Remanded and Opinion filed July 28, 2009








Reversed and Remanded and Opinion filed July 28, 2009.

 

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-08-00101-CV

_______________

 

JACK J. GRYNBERG, INDIVIDUALLY AND D/B/A GRYNBERG
PETROLEUM COMPANY, Appellant

 

V.

 

GREY WOLF DRILLING COMPANY, L.P., Appellee

                                                                                                                            
                   

On Appeal from the 165th District Court

 Harris County, Texas

Trial Court Cause No. 2007-23769

                                                                                                                                               


 

O P I N I O N








In this contract case, appellant Jack
J. Grynberg, individually and d/b/a Grynberg Petroleum Company (AGrynberg)@ paid for services rendered by Grey
Wolf Drilling Company, L.P. (AGrey Wolf@) with a check for less than the invoiced amount.  Grey Wolf
sued to collect the remaining charges, and Grynberg asserted the affirmative
defense of accord and satisfaction.  On cross-motions for summary judgment, the
trial court ruled in Grey Wolf=s favor.  Because neither party established a right to
judgment as a matter of law, we reverse and remand.

I.  Factual
and Procedural Background

On September 12, 2006, appellant oil
well operator Grynberg contracted with appellee Grey Wolf for the provision of
drilling services at an oil well known as Hiawatha State 2-36 in Moffat County,
Colorado.  Grey Wolf commenced operations on September 30, 2006 and concluded
them on November 13, 2006.  Between November 6, 2006 and March 7, 2007, Grey
Wolf sent Grynberg five invoices as follows:

a.         Invoice No. 325-2210, dated November 6,
2006, presents charges totaling $493,467.75 for mobilization, daywork, and
boiler usage;

 

b.         Invoice No. 326‑1579, dated November
7, 2006, presents third-party trucking charges of $25,770.00 for transporting
Grey Wolf=s equipment to the site;

 

c.         Invoice No. 325-2219, dated November 20,
2006, presents charges in the total amount of $259,898.80, representing
$4,900.00 for boiler usage and an additional charge of $254,998.80 for
demobilization.  Grey Wolf explained that this charge was assessed pursuant to
an Aearly-termination@
provision in the contract addressing compensation to be paid if Grynberg
terminated the contract prior to the commencement of operations;

 

d.         Invoice No. 326-1583, dated December 7,
2006, in the amount of $315.90 for third-party charges; and 

 

e.         Invoice No. 326-1600, dated March 7, 2007,
presenting third-party trucking charges in the amount of $59,190.00 for
removing Grey Wolf=s property to the site.

 

The face of each invoice included
instructions to remit payment to Grey Wolf at a Houston post-office box and to
direct billing inquiries to Grey Wolf=s office in Casper, Wyoming.  








By letter dated December 20, 2006,
Grynberg wrote to Grey Wolf at its Wyoming office and stated that he had Ano intention of honoring@ Invoice No. 325-2219 for $259,898.80
because Grey Wolf used Aa junk rig that was in no condition to drill.@  Grynberg further stated that the
contract=s early-termination compensation
provisions did not apply, and he returned the invoice.  On March 21, 2007,
Grynberg returned Invoice No. 326-1600 in the amount of $59,190.00 to Grey
Wolf, stating, AThis is an unheard[-]of billing . . . . 
There is nothing in the contract between us because you pay for moving in - not
for moving out. . . . Sending a bill four months late is the optimum of
gall . . . .@  Grynberg sent the letter and check
to Grey Wolf=s Houston post-office box, and sent a copy to Grey Wolf=s Wyoming address.

Finally, Grynberg wrote to Grey Wolf
on March 22, 2007 as follows:

Re:      Hiawatha State 2-36

Invoice No. 325-2210

 

Gentlemen:

 

We pride ourselves in paying our bills very promptly
but your bill was unrealistic and we expected someone from Grey Wolf to call
us.  To this date, we have not had a call so we cut our check #1095 as full
payment for the work performed.  We have no intention of paying for a junk rig
with inexperienced crews and poor supervision. . . .

Accordingly, your total bill came up to $227,417.30. 
Attached is our check and on the backside it says it is paid in full for your
charges.

 

Grynberg enclosed a check for
$227,417.20, on the back of which it is stated, APayment in full of invoices 325-2210,
326-1583 & 326-1597 [sic].  Endorsement by payee releases Grynberg
Petroleum Co. and Jack J. Grynberg from any further claim or liability thereon.@  Grynberg sent the letter and check
to Grey Wolf=s Houston post-office box, with  a copy to Grey Wolf=s Wyoming address.  Grey Wolf cashed
the check and sued on the contract for $612,166.25, asserting quantum meruit
and unjust enrichment as alternative theories of recovery.  Grynberg denied the
existence of an outstanding account and asserted the affirmative defenses of
accord and satisfaction and payment.








Grynberg moved for traditional
summary judgment solely on the affirmative defense of accord and satisfaction. 
Grey Wolf moved for traditional summary judgment on the ground that AGrynberg waived its right to
challenge its payment obligations@ because it did not Aobject in writing within 15 days of
delivery of the invoice and to deliver any objection to Grey Wolf=s business office located at 10370
Richmond Avenue, Houston, Texas 77042.@  In separate orders signed on
October 12, 2007, the trial court initially denied both summary-judgment
motions, but in an order entered on November 6, 2007, it vacated the Athe earlier order dated October 27,
2007@[1] and granted summary judgment in Grey
Wolf=s favor.  Grynberg=s motion for new trial was overruled
by operation of law, and this appeal timely ensued.

II.  Issues Presented

In two issues, Grynberg challenges
the trial court=s orders  granting Grey Wolf=s motion for summary judgment and
denying his own.

III.  Standard of Review








We review summary judgments de novo.[2] 
In a traditional motion for summary judgment, the movant has the burden of
showing that there is no genuine issue of material fact and it is entitled to
judgment as a matter of law.[3]  We take as
true all evidence favorable to the nonmovant, and indulge every reasonable
inference in the nonmovant=s favor.[4]  Once the
movant establishes its right to summary judgment as a matter of law, the burden
shifts to the non-movant to present evidence raising a genuine issue of
material fact.[5]  Summary
judgment for a defendant is proper only when the defendant negates at least one
element of each of the plaintiff=s theories of recovery, or pleads and
conclusively establishes each element of an affirmative defense.[6] 
Evidence is conclusive only if reasonable people could not differ in their
conclusions.[7]  When, as
here, both sides move for summary judgment, each bears the burden of
establishing that it is entitled to judgment as a matter of law; neither side
can prevail due to the other=s failure to discharge its burden.[8] 


On appeal, we review all summary‑judgment
evidence, determine all questions presented, and render the judgment the trial
court should have rendered.[9]  We may
affirm the judgment, reverse and render a judgment for the other side if
appropriate, or reverse and remand if neither party has met its summary‑judgment
burden.[10]

IV. 
Analysis

A.        Grey
Wolf=s Motion for Summary Judgment








To obtain traditional summary
judgment on its own cause of action, a plaintiff must establish every element
of its claim as a matter of law.[11]  To prevail
on a claim for breach of contract, a plaintiff must establish (1) the existence
of a valid contract, (2) performance or tendered performance by the
plaintiff, (3) breach of the contract by the defendant, and (4) damages
sustained by the plaintiff as a result of the breach.[12] 
Although Grey Wolf is the plaintiff in this case, its traditional
summary-judgment motion was not based on an assertion that Grey Wolf
established the elements of its breach-of-contract claim as a matter of law. 
Instead, Grey Wolf moved for summary judgment only on the grounds that
(1) Grynberg waived any complaint about the amounts billed by Grey Wolf
because he did not send notice of each dispute to Grey Wolf=s Houston street address within 15
days of receiving a contested invoice, and (2) Grynberg=s affirmative defense of accord and
satisfaction fails. 

1.         Grey
Wolf=s Affirmative-Defense Ground

The failure of Grynberg=s affirmative defense, even if
proved, does not present a basis on which summary judgment properly could have
been granted in Grey Wolf=s favor.  In the summary-judgment context, proof of an
affirmative defense is a basis on which a defendant may defeat a plaintiff=s claim even if the plaintiff established
every allegation in its pleadings, but unless the plaintiff has first
established its entitlement to judgment as a matter of law, the failure of an
affirmative defense cannot establish the plaintiff=s right to judgment.[13] 
Thus, in analyzing Grynberg=s challenge to the judgment in Grey Wolf=s favor, we need consider only
whether Grey Wolf established as a matter of law that under the unambiguous
terms of the contract, Grynberg contractually waived any billing dispute that
was not raised by a timely notice sent to Grey Wolf=s Richmond Avenue address.








2.         Grey
Wolf=s Waiver Argument

Grey Wolf=s contractual-waiver argument
requires us to determine the effect of key provisions of the parties= agreement.  Our primary concern in
interpreting a contract is to ascertain the true intent of the parties as
expressed therein.[14]  We give
terms their plain, ordinary, and generally accepted meaning unless the contract
shows the parties used them in a technical or different sense.[15] 
Ordinarily, the writing alone is sufficient to express the parties= intentions, Afor it is objective, not subjective,
intent that controls.@[16]  To the extent of any conflict, specific provisions
control over more general ones.[17]

Here, Grey Wolf=s waiver argument is based on inferences
drawn from two contractual provisions.  Section 5.2 of the contract is a
specific provision governing the time for making payments or raising disputes,
and section 24 is a more general contract provision concerning the address to
which payments and notices are to be sent:

5.         TIME OF PAYMENT

Payment is due by Operator to Contractor as follows: .
. . 

5.2  Disputed Invoices and Late Payment: Operator shall pay all invoices within   30   days
after receipt except that if Operator disputes an invoice or any part thereof,
Operator shall, within fifteen days after receipt of the invoice, notify
Contractor of the item disputed, specifying the reason therefor, and payment of
the disputed item may be withheld until settlement of the dispute, but timely
payment shall be made of any undisputed portion.  Any sums (including amounts
ultimately paid with respect to a disputed invoice) not paid within the above
specified days shall bear interest at the rate of   one   percent or the
maximum legal rate, whichever is less, per month from the due date until paid. 
If Operator does not pay undisputed items within the above stated time,
Contractor may suspend operations or terminate this contract as specified under
Subparagraph 6.3.








. . .

24.       NOTICES AND PLACE OF PAYMENT

Notices,
reports, and other communications required or permitted by this Contract to be
given or sent by one party to the other shall be delivered by hand, mailed,
digitally transmitted or telecopied to the address hereinabove shown.  All sums
payable hereunder to Contractor shall be payable at its address hereinabove
shown unless otherwise specified herein.

Grey Wolf=s only address identified in the
contract is an office on Richmond Avenue in Houston; thus, Grey Wolf contends
that Grynberg had fifteen days after the receipt of each invoice in which to
preserve any challenge to the charges by sending a notice of the dispute to
Grey Wolf=s Richmond Avenue address.  Because Grynberg instead sent notices of his
billing disputes to the addresses Grey Wolf identified on its invoicesCi.e., its Houston post-office box, to
which Grey Wolf instructed Grynberg to send payments, and its Wyoming office,
to which it required Grynberg to direct billing inquiriesCGrey Wolf argues that Grynberg waived
the right to dispute the charges.  

But Grey Wolf=s inference of waiver is inconsistent
with the contract=s plain language, which sets forth a different consequence
for the failure to timely dispute charges.  Read together, sections 5.2 and 24
provide that if Grynberg timely sends notice of a dispute to Grey Wolf=s Richmond Avenue address, then Apayment of the disputed item may be
withheld until settlement of the dispute.@  Items that are not timely disputed
must be paid within thirty days, and sums that are not timely paidCregardless of whether the sum
pertains to a disputed invoiceCaccrue interest from the due date until paid.  The contract
further provides that if Grynberg fails to timely pay an undisputed charge,
then Grey Wolf Amay suspend operations or terminate [the contract] as
specified under Subparagraph 6.3@ of the contract.  This section
governs early termination, and provides in relevant part as follows:

6.3       Early Termination:

 . . .








(c)       By
Contractor: Notwithstanding
the provisions of Paragraph 3 with respect to the depth to be
drilled, . . . if . . . , following
three business days[=] prior written notice to Operator if Operator does not pay
Contractor within the time specified in Subparagraph 5.2 all undisputed items
due and owing, Contractor may, at its option (1) elect to terminate further
performance of any work under this Contract and Contractor=s right to compensation shall be as
set forth in Subparagraph 6.4 hereof, or (2) suspend operations until payment
is made by Operator in which event the standby time rate contained in
Subparagraph 4.6 shall apply until payment is made by Operator and operations
are resumed.

Thus, under the plain language of the
contract, the effect of Grynberg=s failure to timely dispute charges
was not to waive the challenge, but to give Grey Wolf the option, upon three
business days= written notice, to terminate or suspend operations for nonpayment.[18] 
And although the time for Grey Wolf to exercise its early-termination option
has passed, another consequence of Grynberg=s delay remains in effect: pursuant
to section 5.2, interest continues to accrue on all charges that ultimately are
found to be owed.  Contrary to Grey Wolf=s argument, however, no contract
terms provide that if Grynberg neither timely disputes nor timely pays the
invoice, the charges are established or the dispute is waived. 

Because neither of the grounds on
which Grey Wolf moved for summary judgment provide a basis for affirmance, we
sustain Grynberg=s first issue and reverse the trial court=s judgment.

B.        Grynberg=s Motion for Summary Judgment








Grynberg moved for traditional
summary judgment on the sole ground that Grey Wolf=s claim is barred by accord and
satisfaction.  As in its cross-motion for summary judgment, Grey Wolf responded
that any objection to the invoices were waived by Grynberg=s failure to dispute the invoices
within fifteen days[19] and by his
failure to send notice of the dispute to the Grey Wolf=s Richmond Avenue address as
specified in the contract.  On appeal, both parties= arguments concerning Grynberg=s motion focus on section 3.311 of
the Texas Business and Commerce Code, which governs accord and satisfaction by
the use of an instrument.  This section provides in relevant part as follows:

(a)       Subsections (b)‑(d) apply if a person
against whom a claim is asserted proves that:

(1)       that person in good faith tendered an
instrument to the claimant as full satisfaction of the claim;

(2)       the amount of the claim was unliquidated or
subject to a bona fide dispute; and

(3)       the claimant obtained payment of the
instrument.

(b)       Unless Subsection (c) applies, the claim is
discharged if the person against whom the claim is asserted proves that the
instrument or an accompanying written communication contained a conspicuous
statement to the effect that the instrument was tendered as full satisfaction
of the claim.

. . .

(d)       A
claim is discharged if the person against whom the claim is asserted proves
that within a reasonable time before collection of the instrument was
initiated, the claimant, or an agent of the claimant having direct
responsibility with respect to the disputed obligation, knew that the
instrument was tendered in full satisfaction of the claim.

Tex. Bus. & Com. Code Ann. ' 3.311 (Vernon 2002).  For an instrument to be considered
tendered and conspicuously identified as payment in full satisfaction of a
disputed claim as required by section 3.311(a)(1), (b), or (d), 

There must be an unmistakable
communication to the creditor that tender of the lesser sum is upon the
condition that acceptance will constitute satisfaction of the underlying
obligation.  It has been said that the conditions must be made plain, definite and
certain; that the statement accompanying the tender of a sum less than the
contract price must be so clear, full and explicit that it is not susceptible
of any other interpretation; that the offer must be accompanied with acts and
declarations which the creditor is Abound to understand.@[[20]] 








Here, however, Grynberg=s statements on the check and the
accompanying cover letter are not so Aso clear, full and explicit as to be
susceptible to no interpretation other than accord and satisfaction of all outstanding
invoices.@[21]  

The only invoice specifically identified
in the cover letter is Invoice No. 325-2210.  Although Grynberg further stated
in the letter that he enclosed a check for $227,417.30 Aas full payment for the work
performed,@ and that on the back of the check, Ait says it is paid in full for your
charges,@ both of these statements are
factually incorrect.   The amount of the check is misstated, and contrary to
Grynberg=s representation, the back of the
check does not indicate that it is tendered as full payment for Grey Wolf=s services.  To the contrary,
according to the notation on the check, the payment was offered only in
satisfaction of Invoice Nos. 325-2210, 326-1583 and A326-1597.@[22]  Neither the cover letter nor the
restrictive endorsement on the check mention Invoice No. 325-2219 for
$259,898.80 or Invoice No. 326-1600 for $59,190.00.[23] 
At a minimum, the variance between the language of the cover letter and that of
the restrictive endorsement on the back of the check create an issue of
material fact as to what invoices were intended to be released.  








Because Grynberg failed to establish
his entitlement to summary judgment under section 3.311(a), (b), or (d) of the
Business and Commerce Code, we conclude that the trial court did not err in
denying Grynberg=s motion for summary judgment.  We therefore overrule Grynberg=s second issue without reaching Grey
Wolf=s additional argument that, because
Grynberg=s letter and check of March 22, 2007
were not sent to Grey Wolf=s Richmond Avenue address identified in the contract,
Grynberg failed to meet his summary-judgment burden under section 3.311(c)(1).[24]

V. 
Conclusion

Because neither party established a
right to judgment as a matter of law, we reverse the trial court=s judgment and remand the case for
further proceedings in accordance with this opinion.

 

 

 

 

/s/        Eva M. Guzman

Justice

 

Panel consists of Justices Yates,
Guzman, and Sullivan. 

 

 









[1]  It appears from this language that the trial court
vacated only the October 12, 2007 order denying Grey Wolf=s motion for summary judgment. 





[2]  Valence Operating Co. v. Dorsett, 164 S.W.3d
656, 661 (Tex. 2005). 





[3]  Tex. R. Civ.
P. 166a(c); Am. Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425
(Tex. 1997).





[4]  See Joe v. Two Thirty Nine Joint Venture, 145
S.W.3d 150, 157 (Tex. 2004).





[5]  City of Houston v. Clear Creek Basin Auth.,
589 S.W.2d 671, 678B79 (Tex. 1979).





[6]  Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d
910, 911 (Tex. 1997).





[7]  City of Keller v. Wilson, 168 S.W.3d 802, 816
(Tex. 2005).





[8]  City of Garland v. Dallas Morning News, 969
S.W.2d 548, 552 (Tex. App.CDallas 1998)
(en banc), aff=d, 22 S.W.3d
351 (Tex. 2000).





[9]  Coastal Liquids Transp., L.P. v. Harris County
Appraisal Dist., 46 S.W.3d 880, 884 (Tex. 2001); Valence Operating Co.,
164 S.W.3d at 661.





[10]  Hackberry Creek Country Club, Inc. v. Hackberry
Creek Home Owners Ass=n, 205 S.W.3d 46, 50 (Tex. App.CDallas 2006, pet. denied).





[11]  Tex. R. Civ.
P. 166a; Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex.
1985); Ohio Cas. Ins. Co. v. Time Warner Entm=t Co., L.P.,
244 S.W.3d 885, 888 (Tex. App.CDallas 2008,
pet. denied).





[12]  Aguiar v. Segal, 167 S.W.3d 443, 450 (Tex.
App.CHouston [14th Dist.] 2005, no pet.).





[13]  See Clear Creek Basin Auth., 589 S.W.2d at
678 (ASummary judgments must stand on their own merits, and
the non‑movant=s failure to answer or respond cannot supply by
default the summary judgment proof necessary to establish the movant=s right.@); Garcia
v. John Hancock Variable Life Ins. Co., 859 S.W.2d 427, 430 (Tex. App.CSan Antonio 1993, writ denied) (AUnless the movant/defendant conclusively establishes
its affirmative defense, the non‑movant/plaintiff has no burden in response
to a motion for summary judgment filed on the basis of an affirmative defense.@).





[14]  Seagull Energy E & P, Inc. v. Eland Energy,
Inc., 207 S.W.3d 342, 345 (Tex. 2006).





[15]  Heritage Res., Inc. v. NationsBank, 939
S.W.2d 118, 121 (Tex. 1996).





[16]  Matagorda County Hosp. Dist. v. Burwell, 189
S.W.3d 738, 740 (Tex. 2006) (per curiam) (quoting City of Pinehurst v.
Spooner Addition Water Co., 432 S.W.2d 515, 518 (Tex. 1968)).





[17]  Forbau v. Aetna Life Ins. Co., 876 S.W.2d
132. 133B34 (Tex. 1994).





[18]  Grey Wolf=s
final invoice presenting charges for removing its equipment from the site was
time disputed. 





[19]  Although the letter was sent to the addresses
identified in the invoice rather than the address described in the contract,
Grynberg=s challenge to Invoice No. 326-1600, in which Grey
Wolf billed Grynberg $59,190 for third-party trucking charges, was timely. 





[20]  Jenkins v. Henry C. Beck Co., 449 S.W.2d 454,
455 (Tex. 1969) (citations omitted). 





[21]  See Metromarketing Servs., Inc. v. HTT Headwear,
Ltd., 15 S.W.3d 190, 198 (Tex. App.CHouston
[14th Dist.] 2000, no pet.).





[22]  Although there is no such invoice, this may be a
clerical error.  Grynberg may have intended to refer instead to Invoice No.
326-1579 in the amount of $25,770.00.





[23]  From the text of the cover letter, it appears that
Grynberg does not dispute Invoice No. 326-1583 in the amount of $315.90.





[24]  Grey Wolf contends that, for the purposes of the
following section of the statute, notices of claim disputes were required by
the contract to be sent to its office on Richmond Avenue in Houston:

 

(c)        Subject to Subsection (d), a claim is not
discharged under Subsection (b) if either of the following applies:

(1)        The claimant, if an organization, proves
that:

(A)       within a reasonable time before the tender,
the claimant sent a conspicuous statement to the person against whom the claim
is asserted that communications concerning disputed debts, including an
instrument tendered as full satisfaction of a debt, are to be sent to a
designated person, office, or place; and

(B)        the instrument or accompanying
communication was not received by that designated person, office, or place.

 

Tex. Bus. & Com. Code
Ann. '
3.311(c)(1).